**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**

Alexandria Division

| | |
|---|---|
| IN RE DOMINION DENTAL SERVICES USA, INC. DATA BREACH LITIGATION | Action No. 1:19-cv-01050 (LMB-MSN) |

**DOMINION NATIONAL DEFENDANTS' OPPOSITION TO PLAINTIFFS'**
**MOTION TO COMPEL MANDIANT REPORT AND RELATED DOCUMENTS**

Plaintiffs filed four separate lawsuits in this district and now ask the Court to strip privilege from attorney work product and attorney client communications because of "the limited period of time afforded the parties to conduct discovery," and "Plaintiffs do not have the ability to retrace the steps already taken by Mandiant to determine the cause and scope of the data breach." Mot. 3. But the rules governing waiver of privilege are not rules for Plaintiffs' convenience; they require Plaintiffs—who chose this venue—to make a showing of substantial need and undue burden. Plaintiffs have done neither. Moreover, "[d]iscovery was hardly intended to enable a learned profession to perform its functions . . . on wits borrowed from the adversary." *Upjohn Co. v. United States*, 449 U.S. 383, 396 (1981) (quoting *Hickman v. Taylor*, 329 U.S. 495, 516 (1947) (Jackson, J., concurring)) (second alteration in original). Plaintiffs seek the production of attorney-client communications, attorney work product, and non-testifying consulting expert work product—none of which were pre-existing documents in Defendants' possession before they retained counsel. Rather these documents were sought by counsel or created at counsel's direction in order to inform legal counsel and litigation strategy. Plaintiffs' motion should be denied.

**BACKGROUND**

On April 17, 2019, Dominion National (or "Dominion") received an internal alert indicating that a malicious file existed on an internal workstation. Declaration of Kip Miller at ¶3,

attached as Exhibit A. Dominion immediately began an investigation to determine the source of the malicious file and determined by April 24, 2019, that it had suffered a data security incident. Exhibit A at ¶¶4-5. On April 25, 2019, counsel to Dominion engaged an expert consultant, Mandiant, to conduct forensic analyses on Dominion's computer servers to determine the character and scope of the incident.  Exhibit A at ¶7.  The purpose of Mandiant's work was two-fold and explicit: first, to aid legal counsel in determining Defendants' notification obligations under governing law; and, second, to prepare a report in anticipation of the likely regulatory investigations and class action litigation following any such incident. Statement of Work between counsel and Mandiant ("SOW") at 1 ("Counsel is engaging Mandiant on behalf of Customer to assist Counsel in connection with providing legal advice to Customer in anticipation of contested regulatory inquires and litigation related to a security incident."), attached as Exhibit B.

Regarding Dominion's notification obligations, all 50 states and the Department of Health and Human Services require companies in Dominion's position to provide detailed notice to those customers affected by any data security incident—at least where, under varying degrees of risk analysis, there is potential that personal information was compromised. *See, e.g.*, National Conference of State Legislatures list of Security Breach Notification Laws.[1]  Dominion had to identify those individuals affected, what information was potentially exposed, and the other technical aspects of the exposure in order to conduct this legal analysis as to whether or not notice was required under the relevant federal guidelines and state notification laws.  Dominion and its attorneys could not know this information without the help of the expert analysis that Mandiant provided. Exhibit A at ¶8.

---

[1] Available at http://www.ncsl.org/research/telecommunications-and-information-technology/security-breach-notification-laws.aspx (last visited on Dec. 11, 2019).

Mandiant's work included both gathering pertinent facts (e.g., "gathering and interpreting the technical data") and an analysis of those facts (e.g., "Digital forensics, log analysis, and malware analysis support"). Exhibit B at 1. Mandiant's work was understood by Dominion and counsel to be privileged and was protected as such. *Id.* (dictating that all "communications, information, and materials (including the Deliverables) exchanged between Mandiant and Counsel or Customer pursuant to this SOW [shall be treated] in a manner consistent with the maintenance of any such privilege or protection."). Mandiant, counsel and Dominion abided by this rule protecting their communications and work and did not share it outside their privilege. Exhibit A at ¶12. The Statement of Work for Mandiant was signed by BakerHostetler. Exhibit B at 2.

Importantly, Mandiant was never hired to act as a testifying expert for litigation. Defendants will not introduce the Mandiant Report as an exhibit at trial to support any claim or defense in this litigation. And perhaps more importantly, all of the information that Mandiant was able to review has been preserved and will be produced to plaintiffs in the same form as it was provided to Mandiant. Accordingly, for these and the other reasons set forth below, Plaintiffs' motion to compel should be denied.

## LAW AND ARGUMENT

### I.   The Mandiant Report and related communications are privileged attorney client communications.

Under the Federal Rules of Civil Procedure, a party may only obtain discovery regarding non-privileged matters. Fed. R. Civ. P. 26(b)(1). The attorney-client privilege is "the oldest of the privileges for confidential communications known to the common law" and serves the important purpose to "encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S. Ct. 677, 682, 66 L.Ed.2d 584

(1981). Where a consultant has been hired to provide services necessary to the rendering of legal advice, that consultant's work and related communications are deemed privileged. *See, e.g.*, *United States v. Kovel*, 296 F.2d 918, 922 (2d Cir. 1961) (Friendly, J.). Judge Friendly explained the value of this protection in the standard-setting *Kovel* case: "Accounting concepts are a foreign language to some lawyers in almost all cases, and to almost all lawyers in some cases. Hence the presence of an accountant, whether hired by the lawyer or by the client, while the client is relating a complicated tax story to the lawyer, ought not destroy the privilege [. . .] the presence of the accountant is necessary, or at least highly useful, for the effective consultation between the client and the lawyer which the privilege is designed to permit."

Attorney-client privilege applies to Mandiant's work and related communications with counsel and Dominion because: (1) Mandiant was retained by counsel in this matter in anticipation of litigation and in order to enable counsel to Dominion to provide effective consultation on issues such as compliance with legal notice requirements, Exhibit A at ¶8; (2) Mandiant will not be called as a witness at trial; and, (3) no privilege has been waived because Mandiant's work and communications was protected as privileged and confidential by Dominion and counsel, Exhibit A at ¶12. Federal Rule of Civil Procedure 26 protects this expert's work from disclosure. Fed. R. Civ. P. 26(b)(4)(D) (without a showing of "exception circumstances," "a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial."). "[T]he attorney-client privilege 'exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice.'" *Allen* at 601 (citing *Upjohn Co. v. United States*, 449 U.S. 383, 390, 101 S. Ct. 677, 682, 66 L.Ed.2d 584 (1981).

Accordingly, where, as here, a party demonstrates that attorney-client privilege applies to communications between a party, counsel and a consultant, opposing counsel may not discover that information.  Fed. R. Civ. P. 26(b)(4)(D).  This Court has held that parties in a similar position are:

> not required to disclose the materials at issue because non-testifying experts prepared these materials at the direction of Defendant's counsel after [litigation became likely]. Defendant is not required to discover the documents prepared by these non-testifying experts because [plaintiff] cannot demonstrate that exceptional circumstances require Defendant to produce this information. Facts or opinions known 'by an expert who was retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial' may not ordinarily be discovered. Fed R. Civ. P. 26(b)(4)(D). This type of information may only be disclosed upon a showing of 'exceptional circumstances under which it is impracticable for [a] party to obtain facts or opinions on the same subject by other means.' Fed R. Civ. P. 26(b)(4)(D)(ii). While parties may overcome this standard, *the burden is very high*.

*MeadWestvaco Corp. v. Rexam, PLC*, No. 1:10CV511 GBL/TRJ, 2011 WL 2938456, at *6-7 (E.D. Va. July 18, 2011) (emphasis added).  Mandiant is a non-testifying expert retained in anticipation of litigation.  Exhibit A at ¶¶8, 12.  Plaintiff has made *no* showing of exceptional circumstances, the word "exceptional" does not even appear in their Motion, let alone satisfied the "very high" bar in doing so. Plaintiffs' motion to compel this privileged material should be denied.

## II.      The Mandiant Report is protected work product.

A party may not obtain discovery of materials protected by the attorney-client privilege and parties generally "may not discover documents and tangible things that are prepared in anticipation of litigation" with special protection for "the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." *Id.* 26(b)(3)(A)-(B).  The Rules further protect "facts known or opinions held by an expert" who was retained "in anticipation of litigation" and was "not expected to be called as a witness at trial."

5

*Id.* 26(b)(4)(D). Despite these limitations, Plaintiffs seek both attorney-client communications and materials prepared and gathered in anticipation of litigation. This is impermissible.

In the Fourth Circuit, "the work product rule limits discovery of documents (1) prepared by, or under the direction of, an attorney or representative, and (2) in anticipation of litigation." *Yorktowne Shopping Ctr., LLC v. Nat'l Sur. Corp.*, No. 1:10CV1333, 2011 WL 1842720, at *1 (E.D. Va. May 16, 2011) (first citing Fed. R. Civ. P. 26(b)(3); then citing *E.I. DuPont De Nemours and Co. v. Kolon Indus., Inc.* No. 3:09cv58, 2010 U.S. Dist. LEXIS 36530 at *10, 2010 WL 1489966 (E.D. Va. April 13, 2010)). "A document is prepared 'in anticipation of litigation' if it was created because of an event or series of events that could reasonably lead to litigation, and if it would not have been prepared in a substantially similar form but for the prospect of litigation." *Id.* (quoting *RLI Ins. Co. v. Conseco, Inc.,* 447 F.Supp.2d 741,746–48 (E.D.Va.2007)). It is the burden of the party asserting the privilege to establish these two points.

### A. The Mandiant Report was commissioned by counsel.

The Mandiant Report and its underlying analysis were commissioned in April 2019 by legal counsel shortly after Defendants determined that their data security had potentially been compromised. Exhibit A at ¶¶5-7. The purpose of the Mandiant Report was twofold: to aid legal counsel in determining Defendants' notification obligations under governing law, and in anticipation of the inevitable class action litigation following any such incident. Exhibit A at ¶8; Exhibit B at 1 ("Counsel is engaging Mandiant on behalf of Customer to assist Counsel in connection with providing legal advice to Customer in anticipation of contested regulatory inquires and litigation related to a security incident.").

The Mandiant Report aided legal counsel in advising Dominion on how to satisfy its reporting obligations under data breach notification laws. Mandiant's work determined where the vulnerability existed on Dominion's servers, whose information was exposed or potentially

6

exposed, and what type of information may have also been exposed. This work was necessary for the legal risk analysis that Dominion's counsel was required to conduct in compliance with governing law and could not have been conducted by counsel or the company internally. Exhibit A at 7-8.  Much like Judge Friendly's complicated accounting concepts in *Kovel*, information technology concepts are a foreign language to some lawyers in almost all cases, and to almost all lawyers in some cases. *Kovel*, 296 F.2d at 922. Here, an expert in the field of data security was necessary "for the effective consultation between the client and the lawyer." *Id.*  This is why the Mandiant Report and related communications also satisfy the requirements for privileged attorney client communications, not just protection under the work product doctrine, as discussed further in Section I, above.

### B. Dominion anticipated litigation at the time counsel engaged Mandiant.

Plaintiffs assert that Dominion could not have reasonably anticipated litigation upon discovering that it had been the victim of a data security incident. As an initial factual matter, the Mandiant Report was not prepared until well after the initial compromise had been discovered. Moreover, the assertion that Dominion could not have reasonably anticipated litigation at the time the Mandiant Report was created is belied by Plaintiffs' own statements made in this case. In their Amended Corrected Complaint, filed less than three weeks ago, Plaintiffs repeatedly listed various data breach incidents at *other* companies which led to costly and heavily publicized class action lawsuits involving some of the very same counsel present in this case.  *Id.* at ¶¶ 51-54, 56 (discussing data breach incidents at companies like Anthem Inc., Premera Blue Cross, Excellus Health Plan Inc., and Banner Health, which affected over 100 million people in the past four years alone).[2] Simply put, Dominion and its counsel knew that numerous and substantial lawsuits were

---

[2] *See also*, https://www.healthleadersmedia.com/anthem-agrees-record-setting-class-action-settlement-2015-breach; https://www.govtech.com/security/Premera-Blue-Cross-to-Pay-74M-Over-Data-Breach.html;

likely following the discovery of the data security incident at Dominion. And duration of time between an incident and a lawsuit—despite what Plaintiffs contend, Mot. 13-14—does not extinguish privileged protection. *See, e.g.*, *E.I. Du Pont de Nemours & Co. v. Kolon Indus., Inc.*, No. 3:09CV58, 2010 WL 1489966, at *3 n.4 (E.D. Va. Apr. 13, 2010) ("It makes no difference that the anticipated litigation is expected to occur well into the future. Indeed, it is not unusual that lawyers start to work on defending or preparing for anticipated litigation long before the litigation actually occurs. The key is whether litigation, no matter how distant, reasonably can be expected to occur.") Indeed, the only thing that was surprising here was that more than a month passed before the first putative nationwide class action complaint was filed against Dominion National following its announcement of the data security incident. *Barbara Brown v. Dominion Dental Services, Inc., et al.*, No. 19-cv-540 (E.D. Va July 27, 2019) (Hudson, J.). Three more quickly followed suit, which cases have all now been consolidated here. *Joseph Cardiff, et al. v. Dominion Dental USA, Inc., et al.*, No. 19-cv-1050 (E.D. Va. Aug. 9, 2019); *Kimberly Henshaw, et al. v. Dominion Dental Services USA, Inc., et al.*, No. 19-cv-1063 (E.D. Va. Aug. 14, 2019); *Mark Bradley v. Dominion Dental Services USA, Inc., et al.*, No. 19-cv-1199 (E.D. Va. Sept. 17, 2019).

### C.  The Mandiant Report was created "because of" litigation.

Plaintiffs' Motion asserts that "Dominion National cannot credibly claim that it would not have conducted the investigation but for the anticipated threat of litigation." This is a misapplication of the work product doctrine analysis. Dominion does not claim that it would not have conducted an investigation but for the anticipated threat of litigation, and it need not do so. The relevant question is whether the document at issue – the Mandiant Report – "would not have

---

https://www.databreachtoday.com/excellus-faces-breach-related-lawsuit-a-8539;
https://www.fiercehealthcare.com/hospitals-health-systems/banner-health-reaches-proposed-6m-settlement-2016-data-breach (last visited Dec. 11, 2019).

been prepared in a substantially similar form but for the prospect of litigation." *RLI Ins. Co. v. Conseco Inc.*, 477 F.Supp.2d 741, 749 (E.D. Va. 2007). The answer to that question is that, without the potential for litigation, the report would *not* have been prepared in substantially similar form. In fact, if Dominion faced no potential for litigation and did not need this information in order to prepare for potential regulatory inquiries, it was possible that *no* report would have been prepared. Exhibit A at ¶8. Notably, in contrast to a situation in which payment card information has been affected, where governing contractual obligations require the preparation of a forensic report, there was no legal requirement that a forensic report be prepared in this case.  See generally PCI Forensic Investigator (PFI) Program Guide.[3] The sections of the Report that focused on information exposure and the extent of the compromise would not have been necessary for litigation purposes and they only would have been necessary for another privileged purpose: for the "highly useful" purpose of enabling "effective consultation" between counsel and client.  *United States v. Kovel*, 296 F.2d 918, 922 (2d Cir. 1961) (Friendly, J.); *see* Section I, above.

**III.    The Mandiant Report is protected opinion work product and is "absolutely immune" from production.**

The governing SOW shows that Mandiant was contracted for more than just identifying facts but was also engaging in a forensic "analysis" of those facts and what they mean.  Exhibit B at 1.  As an example and among other things, Mandiant provided Dominion's counsel with "[d]igital forensics, log analysis, and malware analysis support," Exhibit B at 1, which is akin to providing its "impressions, conclusions, [and] opinions," related to the events giving rise to the litigation, *National Union Fire Ins. v. Murray Sheet Metal*, 967 F.2d 980, 984 (4th Cir. 1992) (opinion work product applies "whether the material was actually prepared by the attorney or by

---

[3] Available at https://www.pcisecuritystandards.org/documents/PFI_Program_Guide_v3.0.pdf (last visited Dec. 11, 2019).

another 'representative' of the party"). Indeed, Plaintiffs *concede* this point when they ask the

Court for production of the Report because, they say, "even if Plaintiffs' experts can uncover

security flaws from the forensic images, they may reach different *conclusions* than Mandiant."

Mot. 19. In other words, Plaintiffs know that the Mandiant Report contains more than just "facts,"

it includes Mandiant's expert conclusions. Plaintiffs would like a short cut to expert analysis

prepared for counsel in anticipation of litigation. This work is "absolutely immune from

discovery." *National Union Fire Ins.*, 967 F.2d at 984.

IV.     **The Mandiant Report is protected fact work product and Plaintiffs have failed to satisfy burden.**

Even if this Court finds that the Report was fact work product, not opinion, Plaintiffs have

failed to satisfy their burden to strip the Report of privilege protection.

A. **Plaintiffs have no substantial need for the Report and would not suffer undue hardship obtaining the substantial equivalent by other means.**

Documents protected as fact work product may be discoverable only if Plaintiffs "show

that it has substantial need for the materials to prepare its case and cannot, without undue hardship,

obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii).

Plaintiffs' *only* assertion of "substantial need" is the limited amount of time that this Court

offers in discovery. Mot. 18 (discussing "efficiency" and "stream lin[ing] the discovery process").

Simply put, this is not enough. Plaintiffs cannot satisfy the "substantial need" requirement because

Dominion has preserved server images in full and will make them available for Plaintiffs' expert

to review in discovery. The underlying facts, data, and artifacts that Mandiant reviewed in

preparing its Report are not being withheld; they will be produced. Moreover, Mandiant was

retained on April 25, 2019, and it concluded its investigation supporting the report *less than one

month later* on May 17, 2019. Exhibit A at ¶¶7 and 10; Exhibit B at 2. Discovery closes in five

months on May 15, 2020. Plaintiffs can hire their own expert to analyze the same information that

Mandiant did, in the same amount of time that Mandiant did. The Fourth Circuit has acknowledged

the policy considerations underlying work product protection, characterizing immunity for fact

work product as an "anti-freeloader rule designed to prohibit one adverse party from riding to court

on the enterprise of the other." *National Union Fire Ins.*, 967 F.2d at 984 (citing Fed. R. Civ. P.

26 Advisory Committee Notes, 1970 amend., *reprinted in* 48 F.R.D. 487, 501) (Indicating that

each side to litigation "should be encouraged to prepare independently" and "one side should not

automatically have the benefit of the detailed preparatory work of the other side."). Plaintiffs'

requested relief is exactly the freeloader problem the Federal Rules of Civil Procedure and relevant

case law seek to prevent.

Plaintiffs state that it will be "unduly difficult for Plaintiffs to obtain the same information

through other means," but they will have full access to the servers and five times as many months

to complete their work as Mandiant had. Plaintiffs next argue that, unlike Mandiant, Plaintiffs will

not have the ability to question Dominion National data security and infrastructure employees at

will. Mot. 18. But they will have access to this information through depositions, interrogatories

and document requests, and have the benefit of expert witnesses to review the servers. Under these

circumstances, the Mandiant report and materials related to the Mandiant engagement should

remain protected from discovery, as the Central District of California has held. *See In re Experian*

*Data Breach Litig.*, 2017 WL 4325583, at *3 (C.D. Cal. May 18, 2017) (holding Mandiant report

and related work product were protected from discovery under Rule 26(b)(3); "Plaintiffs can,

through discovery, get those same exact server images and hire their own expert to perform the

work Mandiant did.").

Moreover, Plaintiffs have not made any showing that they "cannot, without undue hardship, obtain [a] substantial equivalent [to the Mandiant Report] by other means." They state, without support, that they will need to "obtain and search through thousands of documents and communications—many of which may have not relevance to the breach at all—to piece together and identify" deficiencies. Mot. 19. But Plaintiffs will not need to search through thousands of documents; Mandiant did not do that and Defendants will produce in discovery all materials that were provided to Mandiant. In any event, "[a] showing of expense or inconvenience to Plaintiffs in hiring an expert to perform the same analysis isn't sufficient to overcome the protection of the work product doctrine." *In re Experian*, 2017 WL 4325583, at *3.

## B. There was no waiver of work-product protection.

The SOW governing Mandiant's work for counsel is clear that all "communications, information, and materials (including the Deliverables) exchanged between Mandiant and Counsel or Customer pursuant to this SOW [shall be treated] in a manner consistent with the maintenance of any such privilege or protection." Exhibit B at 1. Mandiant, counsel and Dominion abided by their agreement to protect those privileged communications and work product and did not share them with individuals outside of the privilege. Exhibit A at ¶12. The Report and related communications have not even been shared with law enforcement or government regulators.

## V.     Plaintiffs' cited cases do not support disclosure in this case.

First, Plaintiffs cite *Premera* for the proposition that Mandiant reports, as if they are all the same and prepared for the same purpose, are prepared to fulfill "a necessary business function regardless of litigation or regulatory inquiries." Mot. 11. *Premera* is distinguishable for numerous reasons, including that 1) unlike this case, Premera's IT department had originally retained Mandiant directly to conduct a security assessment, and Premera's engagement of Mandiant through counsel had not occurred until after a vulnerability had been discovered; 2) the Mandiant report itself had been produced to regulators and in discovery as part of a non-waiver agreement between the parties, and questions before the court dealt with other communications between Premera and Mandiant; and 3) in *Premera*, Mandiant had been afforded access to forensic data that was not reasonably accessible to another forensic investigator, unlike this case. As a result, the decision in *Premera* does not speak to the issues presented in this case.

Next, Plaintiffs cite *In re Target Corp. Customer Data Sec. Breach Litig.*, for the proposition that "Target performed its own independent investigation, which was produced, and the attorneys performed a separate investigation through a retained consulting expert, which was protected." Mot. 11. Plaintiffs attempt to distinguish *Target* from *Premera* where "as is the case here—there was but one investigation: the one performed by Mandiant." *Id.* But there was not "but one investigation" performed here. As an initial matter, Dominion and Capital BlueCross performed an internal investigation beginning immediately after learning of the malware on a company computer on April 17, 2019. Exhibit A at ¶¶3-5. Defendants have already agreed to produce in discovery materials related to this internal investigation. Defs' Resp. to Document Req. No. 6 ("REQUEST FOR PRODUCTION NO. 6: All Documents related to the Data Breach, including any internal or external investigations, reports, executive summaries, analyses, or audits.

13

RESPONSE: Subject to the foregoing objections, Defendants will produce any non-privileged documents reflecting internal or external investigations, reports, executive summaries, analyses, or audits."). Moreover, both parties have at their disposal all of the information needed to perform the same forensic investigation Mandiant conducted, using their own designated experts. In fact the investigation that the *Target* court deemed protected is almost exactly analogous to the investigation that Mandiant performed in this case. Moreover, application of the work product doctrine or attorney-client privilege should not depend upon how whether was one or more reports at issue, but rather the nature of the engagement. Here, as in Target, the Report and related materials were conducted for the expressed purpose of maintaining both privilege and confidentiality. Protection therefore should apply.

Next Plaintiffs cite *Experian* and argue that it should not apply here because counsel there "hired Mandiant to conduct an investigation to assist in in providing legal advice." Mot. 12. In the Experian data breach litigation, the court held that the Mandiant forensic report at issue, which was commissioned by Experian's outside counsel, Jones Day, for use in evaluating Experian's legal obligations and developing their legal strategy, was protected from discovery as attorney work product. *See In re Experian Data Breach Litig.*, No. SACV1501592AGDFMX, 2017 WL 4325583 at *2 (C.D. Cal. May 18, 2017)("The evidence here establish[es] that Jones Day instructed Mandiant to do the investigation and, but for the anticipated litigation, the report wouldn't have been prepared in substantially the same form or with the same content."). The court rejected the Plaintiffs' argument that the report was not work product because Experian "had independent business duties to investigate any data breaches, finding that while Experian "indeed had duties under the law to investigate data breaches and under its contract . . . to remedy, investigate, and remediate any data breach," the record clearly demonstrated that

"Mandiant conducted the investigation and prepared its report for Jones Day in anticipation of litigation, even if that wasn't Mandiant's only purpose." Id. at *2. The same result is appropriate here where counsel hired Mandiant to conduct an investigation to assist in in providing legal advice, Exhibit A at ¶¶7-8, and the Report would not be in substantially the same form without the threat of litigation, Exhibit A at ¶11. Plaintiffs' argument that any business purpose in the Mandiant report destroys privilege is flat wrong. *In re Experian Data Breach Litig.*, No. SACV1501592AGDFMX, 2017 WL 4325583 at *2.

In evaluating Experian's claim of privilege, the court cautioned that a document does not need "to be prepared exclusively for use in litigation," indicating that the "because of" standard "considers the totality of the circumstances and affords protection when it can fairly be said that the document was created because of anticipated litigation, and would not have been created in substantially similar form but for the prospect of that litigation." *Id.* at *1 (quoting *In re Grand Jury Subpoena (Mark Torf/Torf Envtl. Mgmt.)*, 357 F.3d 900, 908 (9th Cir. 2004).

The cases cited by Plaintiffs do not support disclosure in this case and their Motion should be denied.

## CONCLUSION

For the foregoing reasons, Defendants respectfully ask this Court to deny Plaintiffs' Motion to Compel.

Date: December 11, 2019

*/s/ Katherine L. McKnight*

Katherine L. McKnight (VA Bar #81482)
BAKER & HOSTETLER, LLP
Washington Square, Suite 1100
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5304
Tel.: (202) 861-1500
E-mail: kmcknight@bakerlaw.com

Paul G. Karlsgodt (pro hac vice)
1801 California Street, Suite 4400
Denver, CO 80202-2662
(303) 861-0600
(303) 861-7805 (facsimile)
pkarlsgodt@bakerlaw.com

David A. Carney (*pro hac vice*)
Key Tower, 127 Public Square, Suite 2000
Cleveland, OH 44114-1214
(216) 621-0200
(216) 696-0740 (facsimile)
dcarney@bakerlaw.com

*Counsel for Defendants Avalon Insurance Company, Capital Advantage Insurance Company, Capital BlueCross, Dominion Dental Services of New Jersey, Inc., Dominion Dental Services USA, Inc., Dominion Dental Services, Inc., Dominion Dental USA, Inc., and Dominion National Insurance Company*

16

## CERTIFICATE OF SERVICE

I hereby certify that on December 11, 2019, the foregoing Dominion National

Defendants' Opposition to Plaintiffs' Motion to Compel Mandiant Report and Related

Documents was filed with the Clerk of Court using the CM/ECF system, which will then send a

notification of such filing (NEF) to all counsel of record.

*/s/ Katherine L. McKnight*

Katherine L. McKnight (VA Bar #81482)
BAKER & HOSTETLER, LLP
Washington Square, Suite 1100
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5304
Telephone: (202) 861-1500
E-mail:    kmcknight@bakerlaw.com

*Counsel for Defendants Avalon Insurance
Company, Capital Advantage Insurance
Company, Capital BlueCross Dominion Dental
Services of New Jersey, Inc., Dominion Dental
Services USA, Inc., Dominion Dental Services,
Inc., Dominion Dental USA, Inc., and
Dominion National Insurance Company*